LaROSE, Judge.
James I. Jackson was civilly committed as a sexually violent predator. Subsequently, he committed a criminal offense for which he is now incarcerated in the Department of Corrections (DOC). Despite his incarceration, he moved that the Department of Children and Families (DCF) perform its annual assessment of whether Mr. Jackson should remain civilly committed. The trial court denied the motion. This is Mr. Jackson’s appeal. We affirm but write to address an issue on which the applicable statutes appear silent.
In 1997, Mr. Jackson was convicted and sentenced to fifteen years in prison for sexual battery, aggravated battery on a person over the age of sixty-five, and burglary with assault. Because he was convicted of a sexually violent offense, DCF evaluated him in March 2009, six months before his August 2009 prison release date, and concluded that he met the criteria for civil commitment as a sexually violent predator. See § 394.913, Fla. Stat. (2008). Upon his release from prison, Mr. Jackson was admitted to the Florida Civil Commitment Center (FCCC) as a detainee, pending a final trial court determination of whether he was a sexually violent predator. See § 394.915. He was committed to the FCCC in April 2010. See ch. 394, Fla. Stat. (2009).
Following such civil commitment, Florida law requires an annual mental examination and a court hearing to determine whether the predator remains dangerous or can be released from commitment. § 394.918.
In November 2011, Mr. Jackson was charged with tampering with a fire suppression device and assault or battery on an FCCC staff member. He was convicted in 2012 and sentenced to four years and eleven months in prison. His scheduled release from DOC is August 2016. As a result of this conviction and sentence, Mr. Jackson is not physically in DCF custody.
In April 2014, the FCCC administrator wrote to Mr. Jackson, advising him that DCF was sending a report about his mental status and progress in treatment to the trial court that committed him. The correspondence advised Mr. Jackson that he could hire a qualified professional to conduct another clinical examination and could request a court-appointed professional if he was indigent. See § 394.918(1), Fla. Stat. (2013). The “treatment progress report” attached to the correspondence stated that Mr. Jackson was evaluated in 2009 and determined to meet commitment criteria. Although Mr. Jackson successfully completed two phases of a program for men who have sexually offended, his chronic behavioral issues had interrupted his treatment, and he had not yet fully addressed treatment issues associated with his offense history. The report recommended continued treatment for Mr. Jackson upon completion of his prison sentence.
In May 2014, Mr. Jackson asked the trial court to compel the State to conduct its annual review of his condition. The trial court denied the request, concluding that DCF had no obligation to do so because Mr. Jackson was not in DCF’s custo *908 dy, see § 394.917(2), but rather was serving a prison sentence with DOC.
Mr. Jackson argues on appeal that because the State has not dismissed the Order of Civil Commitment, DCF must conduct the annual review even during his prison confinement. He contends that if the State refuses to provide the annual examination and court review, it should release him from the current Order of Civil Commitment and file another commitment petition when he is released from DOC.
The State responds that even if an annual review demonstrated that Mr. Jackson should be discharged from civil commitment, review would be pointless now because Mr. Jackson could not be released immediately due to his current prison sentence.[1] The State has the better argument. Nothing in the commitment statute compels the relief sought by Mr. Jackson. Moreover, while Mr. Jackson remains in DOC custody, nothing would be gained by DCF’s examination. He would remain in DOC custody pending completion of his current sentence.
We acknowledge that, within slightly more than a year if not sooner, Mr. Jackson will be released from DOC custody. Under the circumstances posed by Mr. Jackson’s case, the applicable statutes offer no guidance on how to proceed. Presumably, if DCF conducted its examination closer to his release date and concluded • that he was no longer dangerous, Mr. Jackson could be released from both civil commitment and prison at the end of his prison term. Thus, as we explain below, there may be some merit to conducting the examination when Mr. Jackson’s release from prison becomes imminent.
That issue, of course, is not before us. Mr. Jackson wants an examination now. But given the absence of legislative guidance, we cannot say that the trial court acted unreasonably in concluding that the annual evaluations and related court proceedings can be suspended when the offender, such as Mr. Jackson, leaves DCF custody if only temporarily. Presumably, the trial judge assumed that upon Mr. Jackson’s release from prison, he would return to the commitment center, at which point DCF’s obligation to examine him would resume. Such a presumption, too, is not unreasonable. The civil commitment statute applicable to Mr. Jackson, who has been civilly committed since 2010 and is in prison for offenses committed at FCCC, contemplates yearly examinations by DCF against a backdrop of DCF custody. See ch. 394. Until Mr. Jackson is on the verge of release from DOC, the purpose of the annual examination is of no value to Mr. Jackson.
Three out-of-state cases support the trial court’s decision. In State v. Lashaway, 100 A.D.3d 1372, 953 N.Y.S.2d 434 (N.Y.2012), the court held that “because any annual review ... would have no effect given respondent’s current incarceration, the court properly suspended all such proceedings pending respondent’s release from incarceration.” Id. at 1373, 953 N.Y.S.2d 434; see N.Y. Mental Hyg. § 10.09 (McKinney 2014). This holding comports with both the trial court’s ruling here and its understanding that DCF’s *909 obligation to examine Mr. Jackson would resume upon his release from prison.
Similarly a New Jersey court held that “[t]he trial court’s suspension of annual review hearings during incarceration was appropriate under the circumstances and in no way prejudiced Wood.” State ex rel. Wood, No. 20-80, 2007 WL 4356135, at *3 (N.J.App. Dec. 12, 2007) (unpublished in A.2d) (addressing constitutionality of annual review suspension upon return to prison after involuntary commitment for danger to self or others after finding of not guilty by reason of insanity).
Mr. Wood subsequently filed a federal habeas petition on the same grounds. See Wood v. Main, 789 F.Supp.2d 519, 522 (D.N.J.2011). Significantly, the trial court suspended' annual review hearings during incarceration but directed the New Jersey Department of Corrections to notify the court ninety days before Wood’s parole or release to schedule a civil commitment review hearing, so that the decision on continued commitment would be made before his release from prison. Wood, 2007 WL 4356135, at *1; Wood, 789 F.Supp.2d at 521. This requirement addressed the possibly unnecessary deprivation of Mr. Wood’s liberty by postprison confinement for reevaluation. Although the New Jersey statute did not require such a condition, see N.J. Stat. Ann. § 2C:4-9(c) (2014), the trial court seemingly found it an efficient way to protect Mr. Wood’s liberty and to avoid unnecessary State expense of postprison custody for the defendant pending reevaluation.
Florida’s statutory procedures for the initial determination of civil commitment of a person convicted of a sexually violent offense indicate that time is of the essence. The agency with jurisdiction over the person — that is, DOC if the person is in prison — must notify the DCF multidisciplinary team at least 545 days prior to the person’s anticipated release from prison, and the team must evaluate the person and provide a written assessment within 180 days as to whether the person meets the definition of a sexually violent predator. § 394.913(a), (e). Thus, the written assessment is complete at least one year before anticipated release.
If the DCF assessment concludes that the person meets the definition and the State then files a petition, the trial court conducts a trial within thirty days to determine whether probable cause exists to believe the person is a sexually violent predator. §§ 394.914, 394.915(1), 394.916(1). If the trial court finds probable cause, it orders that the person remain in custody in a secure facility if his sentence expires before a final trial court determination by clear and convincing evidence. §§ 394.915(1), 394.917(1). If the allegation is proven, then the person is committed to .DCF custody for control, care, and treatment upon expiration of the prison sentence “until such time as the person’s mental abnormality or personality disorder has so changed that it is safe for the person to be at large.” § 394.917(2). The State followed this procedure when Mr. Jackson was first civilly committed.[2]
*910 In cases where it becomes apparent before the commitment process has begun that a person convicted of a sexually violent offense is going to be immediately released from prison, the person is transferred upon release to DCF custody, and the multidisciplinary team must determine within seventy-two hours whether the person meets the definition of a sexually violent predator. § 394.9135(1), (2). If it determines that the person does not meet the definition, “that person shall be immediately released.” § 394.9135(3). If the person is determined to meet the definition, the state attorney files a petition so alleging; if the trial court finds probable cause to believe the person is a sexually violent predator, the trial court orders the person to be held in a secure facility for a trial within thirty days to determine the question by clear and convincing evidence. §§ .394.9135(3), 394.915, 394.916(1), 394.917(1). If the judge or jury determines that the allegation is true, he is committed to DCF custody for control, care, and treatment. § 394.917(2).[3]
The applicable Florida statutes do not specify the procedure to employ for a person already determined to be a sexually violent predator, but in prison again for new offenses. Under such circumstances, the trial court committed no error in denying Mr. Jackson’s motion. While Mr. Jackson remains in prison for new offenses, nothing would be gained by conducting the evaluation and related court proceedings; Mr. Jackson would not be entitled to immediate release. Because the issue is not before us, we do not address what procedures DCF must follow when Mr. Jackson’s release from prison becomes imminent. We do note that given the dearth of case law addressing these peculiar circumstances and the lack of specific guidance in the applicable statute, the legislature may wish to explore this issue.
Affirmed.
BLACK and SALARIO, JJ., Concur.

. The State argues that even if DCF were required to perform the annual examination, it complied by submitting the treatment progress report based on the information available to it at the time. However, the report does not examine Mr. Jackson’s current mental condition. Instead, it chronicles which parts of the treatment plan he had and had not completed before returning to prison a year earlier. Although the initial evaluation requires a multidisciplinary team that includes two licensed psychiatrists, or psychologists and a personal interview, § 394.913(3)(b), (c), the psychologist who signed this report presumably has not personally interviewed Mr. Jackson in the previous year.

. Six months before his scheduled September 2009 release from prison, Mr. Jackson was assessed to determine whether he met the definition of a sexually violent predator subject to civil commitment. See § 394.913, Fla. Stat. (2008). DCF recommended commitment. See § 394.913(3)(e). Consequently, the State petitioned the court to civilly commit Mr. Jackson as a sexually violent predator. See § 394.914. In July 2009, the trial court determined that probable cause existed to believe that Mr. Jackson was a sexually violent predator and ordered that he was to be transferred immediately to an appropriate secure facility if his prison sentence expired. See § 394.915(1). Upon release from prison in August 2009, DCF took him into custody and held him in a secure facility until conclusion of the trial court proceeding that deter *910 mined that he was a sexually violent predator and committed him to FCCC. See § 394.917.

. The requirements for annual examination and court hearings for release of committed persons follow a similar sequence. See § 394.918. DCF submits the results of its yearly examination of the committed person to the court that committed the person. § 394.918(1). The trial court holds a hearing “to determine whether there is probable cause to believe that the person’s condition has so changed that it is safe for the person to be at large and that the person will not engage in acts of sexual violence if discharged.” § 394.918(3). If the trial court finds probable cause to believe release is safe, it holds a trial at which it is the State's burden to prove by clear and convincing evidence that the person is likely to engage in sexual violence if released. § 394.918(4). If the trial court determines at trial that release is safe, the person is released.